**In re John M. COSTAS and Rachelle M. Costas, Debtors.**

**Maureen Gaughan, Chapter 7 Trustee, Appellant,**

**v.**

**The Edward Dittlof Revocable Trust; Rachelle M. Costas; United States Trustee, Appellees.**

**BAP No. AZ–05–1440–MOSA. Bankruptcy No. 02–19423–RTB. Adversary No. 04–01228–RTB.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted June 22, 2006.

Filed July 13, 2006.

Paul Sala, Allan & Sala, P.L.C., Phoenix, AZ, for Maureen Gaughan, Trustee.

Mark A. Bregman, Bregman & Burt, Scottsdale, AZ, for Rachelle M. Costas; The Edward Dittlof Revocable Trust.

Before: MONTALI, SMITH and AHART,[1] Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge.

A chapter 7[2] trustee sought to avoid as a fraudulent conveyance a disclaimer by the debtor of her interests in a trust. The court entered an order granting the debtor's summary judgment motion and denying the relief sought by the trustee. The trustee appealed and we AFFIRM.

## I.

## FACTS

The facts in this case are undisputed. Debtor Rachelle M. Costas ("Debtor") was the beneficiary of a trust created by her father, Edward P. Dittlof ("Decedent"); within thirty days prior to filing bankruptcy, Debtor disclaimed her interests in that trust, the Edward Dittlof Revocable Trust ("Trust"). The Trust included real property located in Milwaukee, Wisconsin (the "Property"). Pursuant to the terms of the Trust, the following distributions would occur upon the Decedent's death:

"[The Property] to benefit in equal shares to: my daughter [Debtor], my son Eric Dittlof, and my daughter Renee Dittlof, equally who survive me ... I leave all the rest and remainder of the trust property to these same 3 beneficiaries: [Debtor], Eric Dittlof, and Renee Dittlof to be divided equally."

The Trust provided that any beneficiary could disclaim his or her interest in the Trust. The Trust further provided that in the event a beneficiary died before complete distribution of the Trust's assets, the beneficiary's children would receive the beneficiary's share. Arizona law governs issues relating to the Trust.

Decedent died on February 25, 2002. On November 7, 2002, Debtor disclaimed her interest in the Trust (the "Disclaimer"). Prior to the Disclaimer, the value of Debtor's interest in the Trust was no less than $34,800.00.

On December 3, 2002, Debtor and her spouse filed a voluntary chapter 7 petition. Appellant Maureen Gaughan was appointed as the chapter 7 trustee ("Trustee"). Trustee filed a complaint against Debtor and the Trust to avoid the Disclaimer as a fraudulent transfer. Debtor and the Trust (collectively, "Appellees") filed a motion for summary judgment seeking a determination that the Disclaimer could not be avoided as a fraudulent transfer.

Trustee filed a cross-motion for a summary judgment avoiding the Disclaimer for the benefit of the chapter 7 estate. After taking the motions under advisement, the bankruptcy court entered a "minute en-

---

1. Hon. Alan M. Ahart, Bankruptcy Judge for the Central District of California, sitting by designation.

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the

Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, Apr. 20, 2005, 119 Stat. 23.

try/order" holding that the Disclaimer was not a transfer of property subject to avoidance and distinguishing *Drye v. United States*, 528 U.S. 49, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999). On October 24, 2005, the bankruptcy court entered an order granting Appellees' motion for summary judgment and denying Trustee's motion for summary judgment.[3] Trustee filed a timely notice of appeal.

## II.

## ISSUE

Did the bankruptcy court err in concluding that the Disclaimer was not subject to avoidance as a fraudulent conveyance pursuant to section 548?

## III.

## STANDARD OF REVIEW

■ We review *de novo* the bankruptcy court's grant of summary judgment. *Marshack v. Orange Comm'l Credit (In re National Lumber & Supply, Inc.)*, 184 B.R. 74, 77 (9th Cir. BAP 1995); *Mordy v. Chemcarb, Inc. (In re Food Catering &*

*Housing, Inc.)*, 971 F.2d 396, 397 (9th Cir.1992).

## IV.

## DISCUSSION

■ This appeal presents an issue of first impression for this panel: does the Supreme Court's decision in *Drye* overrule authority from this panel and other courts of appeal holding that, under state law, a debtor's prepetition effective disclaimer[4] of an inheritance is not avoidable as a fraudulent transfer under section 548?[5]

Trustee concedes that the Disclaimer was effective under Arizona law. Trustee, however, contends that *Drye* limits the application of state law under which a disclaimer "relates back" to the date of the death of testator and the property passes as though the debtor/beneficiary had predeceased the testator. Arizona law governing this case contains such a "relation-back" provision: Arizona Revised Statutes section 14–2801(G) provided that a "disclaimer relates back for all purposes to the date of death of the decedent" and "the disclaimed interest devolves as if the disclaimant had predeceased the decedent."

---

3. The court did not enter a separate summary judgment. Ordinarily there should be a separate document embodying a final judgment that is distinct from and in addition to an order granting a motion for summary judgment. *See* Fed. R. Bankr.P. 9021. The parties have waived that requirement by continuing to treat the order as a final judgment. *See Casey v. Albertson's Inc.*, 362 F.3d 1254, 1256–59 (9th Cir.), *cert. denied,* 543 U.S. 870, 125 S.Ct. 108, 160 L.Ed.2d 118 (2004).

4. A disclaimer is essentially a refusal to accept an inheritance. As noted by one Arizona commentator:

A beneficiary can be stuck with an unwanted inheritance. Where a person does not want an inheritance, perhaps because of tax or creditor considerations, a qualified disclaimer can be made within nine months

after the decedent's death. The disposition passes as if the disclaiming person had predeceased the decedent, and it cannot be directed by the disclaiming person. Robert H. Feldman, *Misconceptions About Estate Planning*, 36 Ariz. Att'y 30, 31 (Aug./Sept. 1999).

5. Section 548 empowers Trustee to "avoid any transfer of an interest of [Debtor] in property" made within one year of the petition date if the debtor made the transfer with "actual intent to hinder, delay, or defraud" his creditors or, under certain circumstances, if the debtor "received less than a reasonably equivalent value in exchange for such transfer." Here, the bankruptcy court concluded that the disclaimer did not operate as a "transfer of an interest of the debtor in property" during the one-year period prior to filing.

Az. Rev. St. § 14–2801 (effective through 2005).[6]

█ Applying similar state law, courts have repeatedly held that the debtor/beneficiary never held a property interest which could be "fraudulently transferred." *Wood v. Bright (In re Bright)*, 241 B.R. 664, 672 (9th Cir. BAP 1999) (applying the "relation-back" provisions of Washington law, the panel found that the debtor "had no interest in property to transfer and thus the [d]isclaimer does not satisfy the fraudulent conveyance provisions of § 548"); *see also Jones v. Atchison (In re Atchison)*, 925 F.2d 209, 212 (7th Cir.1991) (applying the relation-back principles of Illinois law, the Seventh Circuit held "that the disclaimer does not constitute a transfer of an interest in property which the trustee may avoid under [s]ection 548(a) of the Bankruptcy Code"); *Simpson v. Penner (In re Simpson)*, 36 F.3d 450, 453 (5th Cir.1994) ("under Texas law a disclaimer is not a fraudulent transfer under 11 U.S.C. § 548"). Absent a change in the law, we are bound by our precedent in *Bright*. *Ball v. Payco–General Am. Credits, Inc. (In re Ball)*, 185 B.R. 595, 597 (9th Cir. BAP 1995).

The foregoing case law was decided before the Supreme Court issued its decision in *Drye*. In *Drye*, the Supreme Court concluded that a disclaimer of an inheritance cannot remove the disclaimed property from the reach of a federal tax lien. *Drye*, 528 U.S. at 59, 120 S.Ct. 474. In particular, the Court held that 26 U.S.C. §§ 6321 and 6331 limit the application of state law in determining what property is subject to federal tax liens, noting specifically that

state exemption laws are inapplicable to federal tax liens and collection efforts. *Id.* at 55–56, 120 S.Ct. 474. "Just as 'exempt status under state law does not bind the federal collector,' so federal tax law 'is not struck blind by a disclaimer.'" *Id.* at 59, 120 S.Ct. 474 (internal citations omitted). The Court enumerated examples of where it had held that the Internal Revenue Service had superior rights to other creditors and noted that the language of the tax code "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *Id.* at 5, 120 S.Ct. 474 (quoting *U.S. v. National Bank of Commerce*, 472 U.S. 713, 719–20, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985)). The Court stated that while state law may be helpful in initially determining "what rights the taxpayer has in the property the Government seeks to reach," federal law determines "whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Id.* at 58, 120 S.Ct. 474. The Supreme Court then held that the taxpayer's right to exercise the disclaimer ("th[e] power to channel the estate's assets") constituted "property" or a "right to property" under 26 U.S.C. § 6331 subject to federal tax liens. *Id.* at 61, 120 S.Ct. 474.

Trustee argues that under *Drye*, federal bankruptcy law (like federal tax law) should preempt state disclaimer law with respect to the definition of property interests. In other words, Trustee contends that to the extent the disclaimer operates to "channel property" within an decedent's

---

**6.** In 2005, Arizona repealed and replaced section 14–2801(G), but it is still governing law in this case because the disclaimer occurred in 2002 and the chapter 7 petition was filed in 2002. The new Arizona law contains similar provisions: section 14–10006(A)(1) provides that the disclaimer "takes effect ... as of the time of the intestate's death" and section 14–10006(A)(3) provides that unless otherwise provided in the will or operative instrument, "the disclaimed interest passes as if the disclaimant had died immediately before the time of distribution."

estate, the right to exercise that disclaimer is itself a "property interest" and the actual exercise of that disclaimer thus constitutes the transfer of property of the estate. One bankruptcy court agrees with Trustee's analysis, while two others have held that *Drye* is inapplicable in section 548 cases. We believe the latter cases are more persuasive primarily because, as noted by the Supreme Court, "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. U.S.*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

Trustee relies primarily on *In re Kloubec*, 247 B.R. 246 (Bankr.N.D.Iowa 2000), *aff'd on other grounds*, 268 B.R. 173 (N.D.Iowa 2001), in arguing that *Drye* overrules this panel's decision in *Bright* that under state law "relation-back" statutes, a disclaimer does not operate as a fraudulent transfer of a debtor's property. In *Kloubec*, a debtor disclaimed his inheritance the day prior to filing his chapter 12 petition; the trustee sought to invalidate the disclaimer as a fraudulent transfer under section 548. The bankruptcy court concluded that "even though *Drye* was a tax lien case, the issue decided was identical to the issue presented here, that is, whether the state doctrine of relationship-

back can modify rights created under Federal statutes. The U.S. Supreme Court held unambiguously that this artificially-created state doctrine cannot modify a substantive Federal statute." *Kloubec*, 247 B.R. at 256.[7] Concluding that state law relation-back statutes are inapplicable in defining property rights for the purposes of section 548, the *Kloubec* court held that exercise of the disclaimer "channeled property" away from the bankruptcy estate and was thus a fraudulent transfer. *Id.* Finding that the *Kloubec* debtors had acted fraudulently, the bankruptcy converted their case to chapter 7.[8]

Trustee urges us to apply the reasoning of *Kloubec* here. We decline because we agree with the reasoning of two other post-*Drye* bankruptcy decisions. In *Michael A. Grassmueck, Inc. v. Nistler (In re Nistler)*, 259 B.R. 723 (Bankr.D.Or.2001) and *Garrett v. Bank of Oklahoma (In re Faulk)*, 281 B.R. 15 (Bankr.W.D.Okla. 2002), the bankruptcy courts concluded that *Drye* does not apply to bankruptcy cases arising under section 548 and that the pre-*Drye* law of *Bright* and *Atchison* was still effective law.

In *Nistler*, the debtor disclaimed his inheritance prepetition. The trustee in his chapter 7 estate, citing *Drye* and *Kloubec*,

---

**7.** Six years before *Drye* was decided, the bankruptcy court that decided *Kloubec* issued a decision under section 727(a)(2)(A) holding that state relation-back law should not be considered in determining whether a transfer of property occurred: "It is the finding of this Court that the doctrine of relation-back, for Bankruptcy law purposes, should be construed as a transfer under § 101(58) .... [A] Federal Court is not bound to give effect to the doctrine of relation-back in the same manner as it is to the definition of 'property', particularly when the admitted effect of thwarting creditors is completely contrary to the spirit and philosophy of the Bankruptcy Code." *Agristor Leasing v. Dinsdale (In re Dinsdale)*, 1993 WL 1112064 (Bankr.

N.D.Iowa 1993), *aff'd*, 1995 WL 1312673 (N.D.Iowa 1995). The *Dinsdale* holding is inconsistent with this panel's decision in *Bright*, which would govern but for the question raised about *Drye's* applicability.

**8.** While the district court ultimately affirmed the bankruptcy court's decision to convert the *Kloubec* case, it specifically refused to address the issue of whether *Drye* applied in the "federal bankruptcy fraud context," stating that it "need not make that determination in this litigation." *Kloubec*, 268 B.R. at 177. Instead, the district court held that, under state law, the debtor had waived his right to disclaim his inheritance. *Id.*

sought to avoid the disclaimer as a fraudulent transfer under section 548. *Nistler*, 259 B.R. at 726. The court expressly disagreed with the *Kloubec* decision to apply *Drye* in defining property interests for the purposes of section 548, stating:

> In *Drye*, the Supreme Court specifically relied on the language of § 6321 of the Internal Revenue Code. All of the cases cited by the *Drye* Court involved tax liens. There are many instances where the IRS has superior rights over other creditors, for example, state exemption statutes are not enforceable against the IRS. (Citation omitted). In addition, the result in *Kloubec* would have been the same without looking to *Drye* because the rule in Iowa since 1993 has been that a "disclaimer of an inheritance can form the basis of a fraudulent transfer." [*Kloubec*, 247 B.R.] at 253.
>
> In *Bright*, however, the Ninth Circuit BAP looked to state law and specifically determined that because the debtor's disclaimer related back, such that the debtor was treated as never having possessed any interest in the inheritance, the disclaimer could not be a transfer of an interest of the debtor in property. *In re Bright*, 241 B.R. at 672.

*Nistler*, 259 B.R. at 726–27.

■ The *Nistler* court is correct in observing that the *Drye* decision rests on tax statutes and law which ignore state law exemptions, while the Bankruptcy Code in general observes and respects state law exemptions. In essence, the *Drye* decision is based largely on Congressional mandates that the federal government be able to exercise its extensive abilities to impose liens in order to collect delinquent taxes; the Supreme Court set forth a litany of examples of where the IRS primes other creditors. In contrast, the Supreme Court and Congress have traditionally referred to state law in determining what is property of the estate for the purposes of the Bankruptcy Code. *Butner*, 440 U.S. at 54, 99 S.Ct. 914. "In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law." *Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). Unlike federal tax law governing tax liens, section 548 contains no provision that trumps state law definitions of "property." Absent a Congressional mandate like that in the Internal Revenue Code, bankruptcy courts should not preempt areas of traditional state law in defining property interests.

The court in *Faulk* similarly distinguished *Drye*, noting that "the fact that *Drye* was a tax case cannot be minimized. The [C]ourt's decision was based on its construction of the specific language of Section 6321 of the Internal Revenue Code. In support of its ruling, it cited only cases involving tax liens." *Faulk*, 281 B.R. at 20. The *Faulk* court further distinguished *Drye* factually:

> [I]n *Drye*, the tax lien had been filed and had already attached to the subject property before the disclaimer was filed. This would be analogous to a postpetition disclaimer, where the subject property had become property of the estate before the filing of the disclaimer, and not a prepetition disclaimer, as is before the court. Generally, postpetition disclaimers have not been upheld in bankruptcy. *In re Betz*, 84 B.R. 470 (Bankr. N.D.Ohio 1987). *See* S. Alan Medlin, *An Examination of Disclaimers under UPS 2–801*, 55 *Alb. L.Rev.* 1233, 1265–1266 (1992). Prepetition disclaimers, on the other hand, have been held by most courts as being effective and are not generally construed as transfers for fraudulent transfer purposes, as the cases cited herein indicate.

*Faulk*, 281 B.R. at 20.

The *Faulk* court correctly analogized the disclaimer in *Drye* to a postpetition

disclaimer. Yet, the distinction between *Drye* and the situation presented here and in *Faulk* is even more fundamental. The focus should be on the rights of the parties between themselves. In *Drye*, the Internal Revenue Service assessed its lien before the disclaimer occurred. In essence, the Supreme Court held that the lien could not be defeated by a subsequent disclaimer. Here (as in *Faulk* and *Nistler*), no other parties' rights had affixed in Debtor's interests before she disclaimed them.

We find that the courts in *Nistler* and *Faulk* correctly rejected efforts to apply *Drye* in the context of a section 548 fraudulent transfer action. We therefore conclude that the well-reasoned decision in *Bright* is still binding on us. Consequently, we hold that, under *Bright* and Arizona law, Debtor's Disclaimer was not a fraudulent transfer of property. The bankruptcy court did not err in entering summary judgment in favor of Appellees.

## V.

### CONCLUSION

For the foregoing reasons, we AFFIRM.